**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

SILOAM SPRINGS HOTEL, L.L.C.,

    Plaintiff-Appellant,

v.

CENTURY SURETY COMPANY,

    Defendant-Appellee.

No. 14-6119

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:13-CV-00572-M)

---

Tom E. Mullen (Sterling E. Pratt with him on the briefs), Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Phil R. Richards (Randy Lewin with him on the briefs), Richards & Connor, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **BRISCOE, Chief Judge**, **MURPHY**, and **MATHESON**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.  INTRODUCTION

This case requires that we decide how to determine the citizenship, for purposes of diversity jurisdiction, of a limited liability company ("LLC").  Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the citizenship of all its members.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419-20 (3d Cir. 2010) (citing cases from eight circuits for the proposition that "every federal court of appeals to address the question has concluded that a limited liability company, as an unincorporated business entity, should be treated as a partnership for purposes of establishing citizenship"); *see also ConAgra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1180 (10th Cir. 2015) (holding Supreme Court precedent "dictates that the citizenship of any non-corporate artificial entity is determined by considering all of the entity's members").  Because the materials before this court do not demonstrate that complete diversity of citizenship existed at the time of the filing of the complaint, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570–71 (2004), the matter is **remanded** to the district court for further proceedings.

## II.  BACKGROUND

Siloam Springs Hotel, LLC ("Siloam Springs"), operates a Hampton Inn hotel in Siloam Springs, Arkansas.  It purchased a general liability insurance policy (the "Commercial Lines Policy") from Century Surety Company ("Century

Surety") covering the Hampton Inn for the period of November 13, 2012, through November 13, 2013.  Siloam Springs purchased the Commercial Lines Policy through Century Surety's agent, RCI Insurance Group of Claremore, Oklahoma.

On January 21, 2013, several guests at the Hampton Inn suffered bodily injury due to a sudden, accidental leak of carbon monoxide from the heating element of an indoor swimming pool.  Siloam Springs sought coverage under the Commercial Lines Policy.  Century Surety denied coverage, relying on an exclusion set out in the Commercial Lines Policy.  That provision (the "Indoor Air Exclusion") excludes from coverage "'[b]odily injury' . . . arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause."

In response to Century Surety's denial of coverage, Siloam Springs filed suit in Oklahoma state court seeking a declaration that the Commercial Lines Policy provides coverage for the bodily injuries suffered by the Hampton Inn guests as a result of the carbon monoxide leak.  Century Surety filed a notice of removal, removing the case from state court to the United States District Court for the Western District of Oklahoma.  *See* 28 U.S.C. §§ 1441, 1446.  As the basis for removal, Century Surety asserted the existence of complete diversity of citizenship and an amount in controversy exceeding $75,000.  *See id.* §§ 1332(a), 1441(b). With regard to diversity of citizenship, Century Surety asserted (1) it is

"a corporation organized under the laws of Ohio, with its principal place of business in Michigan," and (2) Siloam Springs is "a corporation organized under the laws of Oklahoma, with its principal place of business in Arkansas." No one questioned the propriety of removal or the existence of diversity jurisdiction in the district court.

After Century Surety removed the case to federal court, the parties filed cross-motions for summary judgment. In its motion, Century Surety asserted that because the insurance contract was to be performed in Arkansas, Oklahoma choice-of-law rules made Arkansas law applicable. It further argued that the Indoor Air Exclusion unambiguously excluded coverage for the carbon-monoxide-based injuries to the guests at the Hampton Inn. For its part, Siloam Springs "decline[d] to contest" Century Surety's assertion that Arkansas law applied because, it asserted, "Arkansas law does not differ from Oklahoma law in any way material to [the] coverage dispute." As to the merits, Siloam Springs asserted the Indoor Air Exclusion was ambiguous and, as such, had to be construed in favor of coverage. Without definitively resolving whether Oklahoma or Arkansas law applies, but relying on precedent from Arkansas, the district court granted summary judgment to Century Surety. In so doing, it concluded the Indoor Air Exclusion unambiguously excluded coverage for bodily injuries resulting from sudden, accidental exposure to carbon monoxide. *But cf. Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 618-19 (Nev. 2014) (holding, on

materially indistinguishable facts, that identical exclusion was ambiguous and did not bar coverage because a policyholder "could reasonably expect that the indoor air quality exclusion applies only to continuously present substances that render the air harmful, and that the policy allows recovery for an unexpected condition that temporarily affects the air quality inside of a building").

Siloam Springs brought this timely appeal challenging the district court's conclusion that the Indoor Air Exclusion unambiguously excluded coverage under the facts of this case. After the parties filed their merits briefs, this court recognized a potential jurisdictional defect in the notice of removal. Century Surety's notice of removal labeled Siloam Springs a "corporation" and asserted Siloam Springs was organized under Oklahoma law and had its principal place of business in Arkansas. *Cf.* 28 U.S.C. § 1332(c) (setting out corporate citizenship rules for purposes of diversity and removal statutes). In contrast to this assertion, however, Siloam Springs is not a corporation; it is an Oklahoma limited liability company. *See generally* Okla. Stat. tit. 18, §§ 2000 to 2060 (setting out the Oklahoma Limited Liability Company Act).

On January 8, 2015, this court issued to Century Surety an order to show cause noting this discrepancy. The order further noted that although this court had yet to address the issue, every circuit to consider the citizenship of an LLC for purposes of diversity jurisdiction has held that an LLC's citizenship is determined by reference to the citizenship of each and every one of its members.

*See Zambelli Fireworks*, 592 F.3d at 420 (collecting cases).  Finally, the order indicated that if this court were to adopt the unanimous approach of the other circuits, Century Surety's notice of removal would not establish the required complete diversity of citizenship because it does not set out the citizenship of the members of Siloam Springs.  *See Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("[B]ecause the jurisdiction of federal courts is limited, there is a presumption against [federal] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (alteration and quotation omitted)).  Accordingly, this court ordered Century Surety to file a supplemental brief addressing the following two questions:

> 1. How should this court determine the citizenship of an LLC for purposes of determining the existence of complete diversity?
>
> 2. Assuming the citizenship of an LLC for purposes of diversity jurisdiction is properly determined by reference to all members of an LLC, what is the citizenship of Siloam Springs, LLC?

In its supplemental brief, Century Surety asserts this court should treat LLCs like corporations for diversity purposes and determine an LLC's citizenship by reference to its state of organization and principal place of business. Alternatively, Century Surety argues that if this court determines the citizenship of an LLC for purposes of diversity jurisdiction must be determined by reference to all members of the LLC, this court should conclude Siloam Springs is a citizen

of Oklahoma, Florida, New York, North Carolina, and Texas. For the reasons set out below, Century Surety's arguments in these regards are unpersuasive.

### III. ANALYSIS

Century Surety asserts this court should treat LLCs like corporations for purposes of diversity jurisdiction citizenship. In so arguing, Century begins by noting that in *Shell Rocky Mountain Production, LLC v. Ultra Resources, Inc.*, 415 F.3d 1158, 1162 (10th Cir. 2005), this court stated that because a party was a Delaware LLC with its principal place of business in Houston, it was a citizen of both Delaware and Texas. The problem with Century Surety's reliance on *Shell* is that *Shell* did not definitively state (or even remotely analyze) the question whether this is the appropriate standard to be used in determining an LLC's citizenship. An exercise of jurisdiction by this court without any analysis of whether that action is proper does not constitute binding precedent for the proposition that jurisdiction must exist when this court is again faced with a similar set of facts. *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) (collecting cases for proposition that "the existence of unaddressed jurisdictional defects has no precedential effect"); *HealthTrio, Inc. v. Centennial River Corp. (In re HealthTrio, Inc.)*, 653 F.3d 1154, 1162 n.8 (10th Cir. 2011) (holding that lack of analysis of, or actual decision on, a jurisdictional issue precludes stare decisis effect on the jurisdictional point). Thus, *Shell* does not require that this court

treat an LLC like a corporation for purposes of determining citizenship in a diversity case.

Alternatively, Century Surety asserts an LLC is sufficiently like a corporation so that it should be treated similarly to a corporation for purposes of 28 U.S.C. § 1332.  In particular, Century Surety notes an LLC is treated as a "separate legal entity" that can sue and be sued under Oklahoma law, Okla Stat. tit. 18, §§ 2003, 2004(B), and members of an LLC are shielded from personal liability, *id.* § 2017.  Century Surety also points out this court has recognized that under Delaware law the interests of members of an LLC are analogous to the interests of shareholders of a corporation.  *See Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1018 n.3 (10th Cir. 2011).

Century Surety is wrong in asserting an LLC is equivalent to a corporation under Oklahoma law.  Rather, an LLC is defined under the Oklahoma code as "an entity that is an *unincorporated association or proprietorship* having one or more members."  Okla. Stat. tit. 18, § 2001(11) (emphasis added).  Thus, without regard to whether the interests of the members of an LLC can be analogized to the interests of a corporate shareholder for some legal purposes, Oklahoma law makes clear that an LLC is not a corporation but is, instead, an unincorporated association.  As this court recently held in *ConAgra*, Supreme Court precedent "dictates that the citizenship of any non-corporate artificial entity is determined by considering all of the entity's members."  776 F.3d at 1180.

In any event, even if the corporation-like status of LLCs under Oklahoma law was unclear, the Supreme Court has specifically held that only those state-created entities that are corporations, in the traditional understanding of that word, will be treated as a person for purposes of diversity jurisdiction:

> [T]he course we take today does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives.  Such accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word "citizen."  The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control.  Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction.  We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.

*Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990).[1]

---

[1] It is worth noting that Congress has indeed prescribed a different rule as to unincorporated associations for purposes of the Class Action Fairness Act ("CAFA").  Under CAFA, suits brought by "unincorporated association[s]" are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by its state of organization and principal place of business, not by the citizenship of its members.  28 U.S.C. 1332(d)(10).  Given that the Supreme Court has made clear it is solely Congress' prerogative to alter the historical rule limiting citizenship status to one special type of entity, the traditional corporation, and given that Congress has chosen to exercise that prerogative when appropriate, Century Surety's request that this court expand to LLCs the established rule for corporations is particularly unpersuasive.

Under Oklahoma law, an LLC is an unincorporated association or proprietorship. Okla. Stat. tit. 18, § 2001(11). Supreme Court precedent makes clear that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members. *Carden*, 494 U.S. at 195-96; *ConAgra*, 776 F.3d at 1180. Thus, this court must reject Century Surety's request to determine the citizenship of Siloam Springs by reference to its state of organization and the state of its primary business operations and, instead, joins all other circuits that have considered the matter in concluding Siloam Springs takes the citizenship of all its members. *See Zambelli Fireworks*, 592 F.3d at 420 (collecting cases).

Century Surety asserts that should this court hold that Siloam Springs's citizenship for purposes of § 1332 is determined by reference to all its members, this court should conclude Siloam Springs is a citizen of Oklahoma, Florida, New York, North Carolina, and Texas. Century Surety's argument is based on a letter Siloam Springs filed with this court in response to the show cause order issued to Century Surety. In that letter, Siloam Springs indicated as follows: "Some time after Century removed this case, we made inquiry of our client as to the members of the [LLC and partnership that together own] Siloam Springs Hotel, LLC. . . . When we asked for the name and place of residents [sic] of the [members of the LLC and partnership], we received the enclosed." The enclosed list sets out a name and address associated with each member of the entities with an ownership

-10-

interest in Siloam Springs. Those members, according to the unsworn list, reside in Oklahoma, Florida, New York, North Carolina, and Texas. Relying on this list, Century asserts this court should conclude diversity jurisdiction is proper in this case.

This court notes at least two overwhelming problems with Century Surety's argument. An individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship. *Whitelock v. Leatherman*, 460 F.2d 507, 514 n.14 (10th Cir. 1972) (holding that "an allegation that a party defendant is a resident of a state is not equivalent to an allegation of citizenship and is insufficient to confer jurisdiction upon the District Court" (quotations omitted)). Century Surety notes, however, that *Whitelock* recognized the proposition that in "certain circumstances . . . proof that a person is a resident of a state may prima facie indicate that he is a citizen of that state." *Id.* The problem with Century Surety's reliance on this aspect of *Whitelock* is that *Whitelock* makes clear the prima facie case flowing from an allegation of residence must be backed up by a district court finding, at some later point in the proceeding, as to the existence of diversity at the time of the filing of the complaint.[2] *Id.* Because the district court did not make any such finding in this

---

[2]*Whitelock v. Leatherman* describes the relevant rule as follows:

[This court's decision in *Kelleam v. Maryland Casualty Co.*, 112 F.2d 940 (10th Cir. 1940), *rev'd on other grounds*, 312 U.S. 377

(continued...)

case, and because this court is not equipped to make such a finding, *Whitelock* is not applicable.

In any event, it is clear the relevant time period for determining the existence of complete diversity is the time of the filing of the complaint. *Id.*; *Grupo Dataflux*, 541 U.S. at 570-72. On its face, the letter from Siloam Springs to this court specifically states that the determination of its members' "place of residents [sic]" occurred "[s]ome time after Century removed this case." Thus, the information set out in the letter is simply not relevant to the question of whether complete diversity existed at the time Siloam Springs filed its suit in Oklahoma state court.

---

[2](...continued)
(1941)], while expressly recognizing that an allegation that a party defendant is a resident of a state is not equivalent to an allegation of citizenship and is insufficient to confer jurisdiction upon the District Court, indicates under certain circumstances that proof that a person is a resident of a state may prima facie indicate that he is a citizen of that state. *See also Walden v. Broce Construction Company*, 357 F.2d 242 (10th Cir. 1966). Jurisdiction in *Kelleam* was sustained notwithstanding failure of the complaint properly to allege the citizenship of the parties because of a finding by the trial court after hearing that diversity of citizenship actually existed. The allegations of residence rather than citizenship were treated in effect as amended to conform to proof. *Cf. Willingham v. Morgan*, 395 U.S. 402, 407 (1969). In the case at bar there was neither proof nor finding of diversity of citizenship; only the general conclusion that the court had jurisdiction, which *Mitchell v. Parham*, 357 F.2d 723 (10th Cir. 1966), teaches is insufficient.

460 F.2d 507, 514 n.14 (10th Cir. 1972) (quotations omitted).

Because the allegations in Century Surety's notice of removal do not properly allege diversity of citizenship, and because this court cannot determine the existence or non-existence of diversity jurisdiction based on the record before us, the appropriate course is to remand this matter to the district court for further proceedings. *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1523 (10th Cir. 1991). In light of the need to remand this case for further development of the jurisdictional record, it is worth noting that states have a particularly strong interest in insurance regulation. *Cf., e.g.*, *The Aransas Project v. Shaw*, 775 F.3d 641, 650 (5th Cir. 2014); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1232 (9th Cir. 1998) (en banc) (Alarcon, J., dissenting) (collecting cases); *Ford Motor Co v. Ins. Comm'r*, 874 F.2d 926, 934 (3d Cir. 1989). Furthermore, although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications. Given these factors, should the district court conclude on remand that diversity jurisdiction is proper, it would be well advised to move on to consider whether the state's interest in insurance regulation would be best served by certifying the coverage questions at issue in this case to the appropriate state supreme court.[3] Such consideration is especially appropriate because

---

[3]Of course, to determine the appropriate state supreme court to which to certify the issue, the district court would have to apply Oklahoma choice-of-law
(continued...)

-13-

certification, "in the long run," "helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 & n.8 (1974); *see also Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716-17 (10th Cir. 2005) (certifying a question regarding construction of "family member" under New Mexico's vehicle insurance statute and noting the insurance question was "distinctively a state-law issue"); *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) (noting district courts have discretion to decline to resolve declaratory judgment actions and holding "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case").

## IV.  CONCLUSION

This matter is hereby **remanded** to the district court for further proceedings consistent with this opinion.

---

[3](...continued)
rules and definitively decide whether this case is governed by Arkansas or Oklahoma law.

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker  
Clerk of Court

March 31, 2015

Chris Wolpert  
Chief Deputy Clerk

Mr. Tom E. Mullen
Mr. Sterling E. Pratt
Fenton Fenton Smith Reneau & Moon
211 North Robinson Avenue
Suite 800N
Oklahoma City, OK 73102

**RE:** 14-6119, Siloam Springs Hotel v. Century Surety Co.
Dist/Ag docket: 5:13-CV-00572-M

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 12 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: Randall Jay Lewin
    Philip Raymond Richards

EAS/na