FILED
SUPREME COURT
STATE OF OKLAHOMA

FEB 2 2 2017

MICHAEL S. RICHIE
CLERK OF
THE APPELLATE COURTS

**2017 OK 14**

# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

|                            |   |                          |
|----------------------------|---|--------------------------|
| SILOAM SPRINGS HOTEL, LLC, | ) |                          |
|                            | ) |                          |
| Plaintiff,                 | ) |                          |
|                            | ) |                          |
| v.                         | ) | No. 114,872              |
|                            | ) |                          |
| CENTURY SURETY COMPANY,    | ) | For Official Publication |
|                            | ) |                          |
| Defendant.                 | ) |                          |

### CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

¶0 The United States District Court for the Western District of Oklahoma certified to this Court a single question of state law pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611.

### CERTIFIED QUESTION ANSWERED

Tom E. Mullen and Sterling E. Pratt, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Plaintiff.

Phil R. Richards and Randy Lewin, Richards & Connor, Tulsa, Oklahoma, for Defendant.

**COMBS, C.J.:**

¶1 The United States District Court for the Western District of Oklahoma

(Western District) certified a single question of state law to this Court under the

Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-

1611.  The question certified is:

Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

We answer the question in the negative.

## CERTIFIED FACTS AND PROCEDURAL HISTORY

¶2 The underlying facts in this cause are set out in the certification order from the Western District. In answering a certified question, the Court does not presume facts outside those offered by the certification order. *Howard v. Zimmer, Inc.*, 2013 OK 17, n.5, 299 P.3d 463; *In re Harris*, 2002 OK 35, ¶4 n.5, 49 P.3d 710; *Jones v. Univ. of Cent. Okla.*, 1995 OK 138, ¶5, 910 P.2d 987. Although this Court will neither add nor delete such facts, we may consider uncontested facts supported by the record. *Howard*, 2013 OK 17, n.5; *McQueen, Rains, & Tresch, LLP v. CITGO Petroleum Corp.*, 2008 OK 66, n.4, 195 P.3d 35; *In re Harris*, 2002 OK 35, ¶4.

¶3 Defendant Century Surety Company (Century) issued a Commercial Lines Policy to Plaintiff Siloam Springs Hotel, L.L.C. (Siloam). This policy included general liability insurance coverage of Siloam's hotel in Siloam Springs, Arkansas, for the policy period from November 13, 2012, through November 13, 2013. The insuring agreement of the general liability coverage form provided that

2

Century would pay sums the insured was legally obligated to pay as damages because of bodily injury to which the insurance applies and that Century would have the right and duty to defend the insured against any suit seeking such damages.

¶4 The coverage provided by the policy was modified by an "Arkansas – Special Exclusions and Limitations Endorsement" (Exclusions) which added certain exclusions to the policy. At issue in the underlying cause is the interpretation of section (A)(6) of the Exclusions (Indoor Air Exclusion), specifically subsection (j) which provides that the insurance afforded by the policy does not apply to:

> "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause…

Century Surety Policy, CGL 1701AR 0711, Section A(6)(j), p.1.

¶5 On January 17, 2013, several guests inside of the hotel allegedly suffered bodily injury due to carbon monoxide poisoning. The carbon monoxide allegedly escaped into the air due to leakage from the hotel's indoor swimming pool heater. Siloam sought coverage under its policy from Century, which Century denied based on the Indoor Air Exclusion at issue.

¶6 After Century denied coverage, Siloam filed suit seeking a declaration that the policy provides coverage for the bodily injury of the guests which occurred

3

on January 17, 2013. Siloam originally filed suit in the District Court of Oklahoma County on May 12, 2013, but the cause was removed to the Western District after Century filed a notice of removal on June 4, 2013.

¶7 Both parties moved for summary judgment in the Western District on April 1, 2014. In an order filed on May 14, 2014, the Western District granted Century's motion for summary judgment and denied Siloam's motion. The court determined: 1) the Indoor Air Exclusion was not ambiguous; and 2) the exclusion applied to Siloam's claim for the injuries of its guests and therefore the policy issued by Century afforded no coverage for the loss. Accordingly, the court entered judgment for Century.

¶8 Siloam appealed the Western District's ruling to the United States Court of Appeals for the Tenth Circuit (Tenth Circuit). The Tenth Circuit issued its opinion in the matter on March 31, 2015. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233 (10th Cir. 2015). The Tenth Circuit did not reach the merits of the underlying cause because it noticed a potential jurisdictional defect in the notice of removal to federal court filed by Century at the onset of litigation. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1235. The Tenth Circuit determined that Century's notice of removal incorrectly identified Siloam as a "corporation" organized under Oklahoma law with its principle place of business in Arkansas,

4

when in fact Siloam is an Oklahoma limited liability company. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1235.

¶9 Because Siloam is an Oklahoma limited liability company, the Tenth Circuit determined that references to its state of organization and state of its primary business operations were insufficient to determine citizenship for purposes of federal diversity jurisdiction. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1237-38. Instead, the Tenth Circuit joined other circuits that have previously considered the issue and determined that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all of the entity's members. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1237-38. The Tenth Circuit held that for diversity purposes, Siloam Springs takes the citizenship of all of its members, because under Oklahoma law an LLC is an unincorporated association or proprietorship. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1237.

¶10 The Tenth Circuit further held that the time period for determining the existence of complete diversity is at the time of the filing of the complaint. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1239. Because the allegations in Century's notice of removal did not properly allege diversity of citizenship, and because the court could not determine the existence or non-existence of diversity jurisdiction based on the record before it, the Tenth Circuit remanded to the district court for further proceedings. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1239.

¶11 In the closing paragraph of its opinion, however, the Tenth Circuit provided guidance to the Western District that is relevant to this Court's task in analyzing the certified question posed to it. The Tenth Circuit noted:

> In light of the need to remand this case for further development of the jurisdictional record, it is worth noting that states have a particularly strong interest in insurance regulation. *Cf., e.g., The Aransas Project v. Shaw,* 775 F.3d 641, 650 (5th Cir.2014); *Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1232 (9th Cir.1998) (en banc) (Alarcon, J., dissenting) (collecting cases); *Ford Motor Co. v. Ins. Comm'r,* 874 F.2d 926, 934 (3d Cir.1989). Furthermore, although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications. Given these factors, should the district court conclude on remand that diversity jurisdiction is proper, it would be well advised to move on to consider whether the state's interest in insurance regulation would be best served by certifying the coverage questions at issue in this case to the appropriate state supreme court.

*Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1239.

The Tenth Circuit also noted that to determine the proper court for certification, the Western District would need to definitively decide whether the cause is governed by Arkansas or Oklahoma law. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1239, n.3.

¶12 On remand, the Western District ordered Century to file a brief with supporting evidence concerning whether complete diversity existed at the time Siloam filed suit in state court. Having reviewed the evidence, the Western District issued an order on February 9, 2016, determining it had jurisdiction over

the matter.  The court determined complete diversity of citizenship existed at the time Siloam's suit was filed and at the time it was removed to federal court by Century.  The Western District further determined that the questions at issue in the cause should be certified to the appropriate state supreme court per the Tenth Circuit's opinion, and it ordered the parties to submit briefs regarding: 1) which state supreme court is the appropriate state supreme court for certification, Arkansas or Oklahoma, and 2) what question(s) should be certified.

¶13 During briefing on the above two questions, the parties differed as to the scope of the question(s) they believed it appropriate for the Western District to certify.  Siloam argued Oklahoma law applies, and asserted two questions directly addressing the ambiguity of the Indoor Air Exclusion and its application to the instant cause should be certified to this Court.  Century also argued Oklahoma law is applicable, but asserted the only question certified should be whether the public policy of this state prohibits enforcement of the Indoor Air Exclusion.  In an order filed March 21, 2016, the Western District held that Oklahoma law applies, and determined the question certified should be narrowly tailored to address only the policy concern expressed by the Tenth Circuit.  Accordingly, it certified the following question:

> Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused

7

by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

Order Certifying Question to the Oklahoma Supreme Court, March 21, 2016, p.2.

# I.
## PROCEDURE AND REQUIREMENTS FOR ANSWERING CERTIFIED QUESTIONS

¶14 Unresolved questions of law may be answered by this Court if certified questions are presented in accordance with the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601-1611. *Gov. Employees Ins. Co. v. Quine*, 2011 OK 88, ¶13, 264 P.3d 1245. This Court's discretionary power to answer is set out in 20 O.S. 2011 § 1602, which provides:

> The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States, or by an appellate court of another state, or of a federally recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

Accordingly, in assessing whether a certified federal question of law should be answered by this Court, both factors mentioned by 20 O.S. 2011 § 1602 should be addressed: 1) would the answer be dispositive of an issue in pending litigation in

the certifying court; and 2) is there established and controlling law on the subject

matter? *Quine*, 2011 OK 88, ¶13, 264 P.3d 1245.[1]

¶15 This Court also possesses discretionary authority to reformulate the

question(s) certified. *McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp.*,

2008 OK 66, ¶1 n.1, 195 P.3d 35; *Tyler v. Shelter Mutual Ins. Co.*, 2008 OK 9, ¶1

n.1, 184 P.3d 496; *McClure v. ConocoPhillips Co.*, 2006 OK 42, ¶1 n.1, 142 P.3d

390. This authority is set out in 20 O.S. 2011 § 1602.1, which provides: "[t]he

Supreme Court of this state may reformulate a question of law certified to it."[2]

¶16 At the outset, this Court notes that although Siloam has not specifically

requested that this Court reformulate the question certified to us by the United

States District Court for the Western District of Oklahoma, Siloam has indicated in

briefing that it believes the public policy question certified is intrinsically linked to

the meaning of the Indoor Air Exclusion and its potential ambiguity. Siloam

---

[1] *In Ball v. Wilshire Ins. Co.*, this Court noted:

> We have elected to decline to answer questions certified in a number of causes. Scottsdale Ins. Co. v. Tolliver, 2005 OK 93, 127 P.3d 611 [Declined to answer certified question where controlling Oklahoma precedent existed on the issue certified.]; Hammock v. United States, 2003 OK 77, 78 P.3d 93 [Declined to answer one of two certified questions because of lack of legal relationship necessary to determine the issue.]; Bituminous Casualty Corp. v. Cowen Constr. Co., 2002 OK 34, 55 P.3d 1030, 106 A.L.R.5th 713 [Declined to answer one of two questions certified where response to one question disposed of the case.]; Cray v. Deloitte Haskins & Sells, 1996 OK 102, 925 P.2d 60 [Declined to answer certified question since federal judge made final determination on issue of duty such that Supreme Court was without judicial authority to either affirm or reverse that judgment.]

2007 OK 80, ¶4 n. 8, 184 P.3d 463.

[2] Title 20 O.S. 2011 § 1604 requires the certifying court acknowledge this authority and states the certification order must contain "[a] statement acknowledging that the Supreme Court or Court of Criminal Appeals of this state, acting as the receiving court, may reformulate the question." The certification order from the Western District does not contain such a statement, but otherwise complies with statutory requirements.

argues a negative answer to the certified question alone is not outcome
determinative:

> ... even if public policy does not prohibit the enforcement of the
> Indoor Air Exclusion generally, the question of whether the Indoor
> Air Exclusion is ambiguous as applied-the coverage question at issue
> in this lawsuit-remains to be answered.

Brief of Plaintiff Siloam Springs Hotel, LLC, Regarding Certified Question, p. 1.

Contrary to Siloam's argument, however, 20 O.S. 2011 § 1602 does not foreclose

an answer to a question simply because this Court's response may not be

dispositive of the cause.  All that is required for us to answer a certified question is

that the response be determinative of a single issue in the cause and that no

controlling state law exist.  *Hollaway v. UNUM Life Ins. Co. of America*, 2003 OK

90, ¶13, 89 P.3d 1022.

¶17 Siloam also emphasizes the Tenth Circuit advised the Western District

to certify the coverage questions at issue, generally, to the appropriate state court.

Specifically, the Tenth Circuit stated:

> Furthermore, although the parties argue the coverage issue exclusively
> by reference to generally applicable contract principles, it is far from
> clear the coverage issue at the center of this case is completely devoid
> of public policy implications. Given these factors, should the district
> court conclude on remand that diversity jurisdiction is proper, it
> would be well advised to move on to consider whether the state's
> interest in insurance regulation would be best served by certifying the
> coverage questions at issue in this case to the appropriate state
> supreme court.

*Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).

¶18 The Western District **has already** made a determination that the Indoor Air Exclusion is unambiguous and that the policy issued by Century did not provide coverage. While Siloam is correct that the Tenth Circuit suggested the Western District certify the coverage questions at issue to the appropriate state court, the Tenth Circuit did not reverse the Western District's underlying determinations, or indeed make any ruling on the merits of the matter, instead confining its opinion to the question of diversity jurisdiction. Further, the question certified is determinative of one of the issues in the cause, and no controlling precedent exists. *Hollaway*, 2003 OK 90, ¶13. This Court will answer the question as certified.

## II.
## THE PUBLIC POLICY OF THE STATE OF OKLAHOMA DOES NOT PROHIBIT ENFORCEMENT OF THE INDOOR AIR EXCLUSION

¶19 The question certified to this Court concerns public policy in the state of Oklahoma and whether it prohibits enforcement of a specific coverage exclusion in an insurance contract. We determine it does not.

### A. Freedom of Contract May Be Limited By Public Policy

¶20 While the freedom of individuals to contract is an important aspect of our society, that freedom is not absolute. This Court has long acknowledged that freedom of contract may be limited by the public policy of the state of Oklahoma.

11

*See Harkrider v. Posey*, 2000 OK 94, ¶19 n.42, 24 P.3d 821; *Mercury Inv. Co. v.*

*F.W. Woolworth Co.*, 1985 OK 38, ¶10 n.14, 706 P.2d 523; *Cameron & Henderson*

*v. Franks*, 1947 OK 232, ¶36, 184 P.2d 965.  In *Cameron & Henderson v. Franks*,

this Court stated:

> Public policy is synonymous with the policy of the law, expressed by
> manifest will of the state. Jacoway v. Denton, 25 Ark. 625. Its
> principle inhibits that which has a tendency to be injurious to the good
> of all. Disbrow v. Cass County Board of Sup'rs, 119 Iowa 538, 93
> N.W. 585. Public policy is variable in so far as habits and capacities
> of the public become more varied and complex, but the principle to be
> applied is unchanged and unchangeable. Wakefield v. Van Tassell,
> 202 Ill. 41, 66 N.E. 830, 65 L.R.A. 511, 95 Am.St.Rep. 207.
>
> **Public policy extends to freedom of contract in so far as private
> dealing is restricted by law for the good of the
> community.** People's Bank v. Dalton, 2 Okl. 476, 37 P. 807. Yet
> public policy in the administration of law by the court may be
> essentially different from what may be public policy in the view of the
> Legislature. Enders v. Enders, 164 Pa. 266, 30 A. 129, 27 L.R.A. 56,
> 44 Am.St.Rep. 598.
>
> Judicial tribunals often cautiously hold that there is no public policy
> except what is to be found in statutory laws and the
> Constitution. Smith v. Du Bose, 78 Ga. 413, 3 S.E. 309, 6 Am.St.Rep.
> 260. But the public policy of the state has been found in judicial
> records as well as in the statutes and Constitution. People v. Hawkins,
> 157 N.Y. 1, 51 N.E. 257, 42 L.R.A. 490, 68 Am.St.Rep. 736;Swann v.
> Swann, C.C., 21 F. 299. Public policy has been established by general
> consent as well as by the courts, In re Lampson's Will, 33 App.Div.
> 49, 53 N.Y.S. 531, particularly as declared by the state's highest
> court, Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U.S.
> 91, 20 S.Ct. 33, 44 L.Ed. 84.

1947 OK 232, ¶¶35-37 (emphasis added).

¶21 Freedom of contract is limited then, insomuch as it conflicts with the public policy of Oklahoma. Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy. *Kruchowski v. Weyerhaeuser Co.*, 2008 OK 105, ¶24 n.22, 202 P.3d 144; *Vasek v. Bd. of County Comm'rs of Noble County*, 2008 OK 35, ¶12, 186 P.3d 928; *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶13, 176 P.3d 1204. The Oklahoma Legislature, not this Court or Congress, is primarily vested with the responsibility to declare the public policy of this state. *Griffin v. Mullinix*, 1997 OK 120, ¶18, 947 P.2d 177. *See City of Anadarko v. Fraternal Order of Police, Lodge 118*, 1997 OK 14, ¶10, 934 P.2d 328 ("It is the duty of the Legislature to make the public policy for Oklahoma."); *City of Bethany v. Public Employees Relations Bd. of State of Okla.*, 1995 OK 99, ¶27, 904 P.2d 604 ("In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state. When courts make public policy pronouncements, they are worthy of respect only when they are rooted in specific sources of law and not in the policy preferences of the judges who render them."). This Court, then, will look to will of the Legislature as embodied in the statutes to determine the public policy of the state of Oklahoma.

¶22 Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into policy. *Shepard v. Farmers Ins. Co., Inc.*, 1983 OK 103, ¶2, 678 P.2d 250. The parties to an insurance contract agree upon the terms of the contract and are free to limit or restrict an insurer's liability. *Shepard*, 1983 OK 103, ¶2. The court will interpret the policy in light of the statute, but will not rewrite the contract. *Shepard*, 1983 OK 103, ¶2; *Wiley v. Travelers Insurance Co.*, 1974 OK 147, ¶16, 534 P.2d 1293; *American Iron & M. Wks. v. Insurance Co. of N. Am.*, 1962 OK 197, ¶12, 375 P.2d 873. Looking beyond the express terms of the statutes, in Oklahoma, a contract violates public policy only if it clearly tends to injure public health, morals or confidence in the administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property. *Shepard*, 1983 OK 103, ¶3; *Anderson v. Reed*, 1928 OK 268, ¶22, 270 P. 854. See *Parker v. Indep. School Dist. No. I-003 of Okmulgee County, Okla.*, 82 F.3d 952, 954-955 (10th Cir. 1996). Courts will exercise their power to nullify contracts made in contravention of public policy only rarely, with great caution and in cases that are free from doubt. *Shepard*, 1983 OK 103, ¶3; *Johnston v. J.R. Watkins Co.*, 1945 OK 123, ¶12, 157 P.2d 755; *Camp v. Black Gold Petroleum Co.*, 1941 OK 371, ¶15, 119 P.2d 815.

14

¶23 This Court has previously found coverage exclusions in insurance contracts to be unenforceable when they violate established public policy as expressed in the Oklahoma statutes. In *Ball v. Wilshire Insurance Co*, 2009 OK 38, 221 P.3d 717, this Court answered questions of state law certified to it by the Tenth Circuit. The first question certified—and the one relevant to our current analysis—was whether a motor-vehicle insurance policy provision that excluded any coverage for vehicles loaned or rented to others, was void in whole or in part, in light of Oklahoma's Compulsory Liability Insurance statute, 47 O.S. §7-600 to §7-612. *Ball*, 2009 OK 38, ¶1.

¶24 This Court determined the loaned vehicle exclusion violated public policy as expressed in the Compulsory Liability Insurance statute, holding:

> The principal purpose of compulsory liability insurance is to protect the public from the financial hardship that may result from the use of automobiles by people who are financially unable to respond in damages for any injury done. In enacting legislation compelling the purchase of liability insurance, the legislature intended that *every vehicle operated in this state be secured* against liability to innocent victims of the negligent operation of insured vehicles. This clearly articulated public policy plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the Compulsory Liability Insurance Law. In light of this public policy, clauses which would exclude from coverage all potential claimants have been almost uniformly invalidated because they are at odds with the legislative intent of the Compulsory Liability Insurance Law. Our decisions make clear that an insured vehicle cannot be rendered uninsured *vis a vis* the general public.

*Ball*, 2009 OK 38, ¶12 (footnotes omitted).

15

*Ball* illustrates the manner in which an insurance clause can be void and unenforceable if it violates public policy as expressed in the Oklahoma statutes. *Ball* is also merely one of many cases in which this Court has invalidated automobile insurance clauses for violating public policy as expressed in the Compulsory Liability Insurance Law.[3]

¶25 The interplay between freedom of contract and public policy is also at the core of another line of cases, those concerning the employment-at-will doctrine.[4] The principle of freedom of contract is one of the factors behind the growth of the at-will doctrine. *Burk v. K-Mart Corp.*, 1989 OK 22, ¶5, 770 P.2d 24. In *Burk*, this Court noted:

---

[3] This Court noted several of them in *Ball*, 2009 OK 38, ¶12 n.23:

> *See* Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc., 1987 OK 121, 747 P.2d 947 (answering certified question of law, court held that it was a violation of public policy for insurer and insured to agree that liability insurance coverage of a commercial vehicle would not apply beyond a 200-mile radius; provision void insofar as it limited the minimum coverage required by the statute); Young v. Mid-Continent Cas. Co., 1987 OK 88, 743 P.2d 1084 (invalidating clause in automobile liability insurance policy that excluded coverage if insured vehicle was operated by any person under the age of twenty-five years); Nation v. State Farm Ins. Co., 1994 OK 54, 880 P.2d 877 (Per Curiam) (invalidating to the extent of the minimum coverage required by statute an exclusion that eliminated liability coverage for injury to members of the family of an insured who reside in the same household as the insured); Harkrider v. Posey, 2000 OK 94, 24 P.3d 821 (refusing to permit an insurance company to rescind an insurance policy as to an innocent third-party victim based on a misrepresentation in the application); Hartline v. Hartline, 2001 OK 15, 39 P.3d 765 (holding that named insured injured while riding as a passenger could not be excluded from liability coverage where the other named insured had rejected uninsured motorist coverage).

[4] The at-will employment doctrine is explained succinctly in *Burk v. K-Mart Corp.*, where this Court noted:

> This Court has long recognized the basic principle that an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract. Such indefinite employment contracts are deemed terminable-at-will. The classic statement of the at-will rule was that an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong

1989 OK 22, ¶5, 770 P.2d 24 (footnotes omitted).

16

> ... the terminable-at-will doctrine is "not absolute however, and the interests of the people of Oklahoma are not best served by a marketplace of cut-throat business dealings where the law of the jungle is thinly clad in contractual lace."

1989 OK 22, ¶6 (quoting *Hall v. Farmers Ins. Exchange*, 1985 OK 40, ¶13, 713 P.2d 1027).

Accordingly, this Court adopted a public policy exception to the employment-at-will doctrine "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." *Burk*, 1989 OK 22, ¶17. Though *Burk* and its progeny[5] concern an action in tort, the underlying interaction between public policy concerns and freedom of contract is still useful in this context to provide a firm framework for when this Court is willing to invalidate contractual provisions for public policy reasons.

## B. The Indoor Air Exclusion Does Not Run Afoul of Public Policy Concerns

¶26 Siloam acknowledges at the outset that Oklahoma appellate opinions holding insurance policy exclusions violate public policy appear to be limited to the compulsory automobile insurance and uninsured motorist contexts, discussed *supra*. However, Siloam cites to *Shepard* for the proposition that a contract violates public policy, even absent an express statutory expression, if it "clearly

---

[5] This Court has continued to refine and apply the parameters of the *Burk* tort over the years. *See, e.g., Moore v. Warr Acres Nursing Center, LLC.*, 2016 OK 28, __ P.3d ___; *Vasek v. Bd. Of County Comm'rs*, 2008 OK 35, 186 P.3d 928; *Silver v. CPC-Sherwood Manor, Inc.*, 2004 OK 1, 84 P.3d 728; *Clinton v. State of Oklahoma ex rel. Logan County Election Bd.*, 2001 OK 52, 29 P.3d 543.

tends to injure public health, morals or confidence in the administration of law."
1983 OK 103, ¶3, 678 P.2d 250.

¶27 Siloam then asserts that the coverage question before the Western District, concerning the Indoor Air Exclusions ambiguity, is a necessary aspect of any determination concerning whether the Indoor Air Exclusion violates public policy. This is so, according to Siloam, because the Indoor Air Exclusion as applied to a sudden carbon monoxide leak violates public policy because it potentially denies compensation to victims under circumstances in which a reasonable person would expect that liability insurance would be available to compensate for the injury. By way of contrast, Siloam argues an indoor air exclusion for long-term air quality issues like mold might not violate public policy, as a reasonable person would not expect liability coverage in that situation because the policy holder would have ample time to detect and remedy the issue. Per this line of argument, while the Indoor Air Exclusion may not violate public policy generally, as applied to sudden and accidental occurrences, as in this cause, it would violate public policy.

¶28 Siloam's focus on the scope of the Indoor Air Exclusion is misplaced. Questions concerning the parameters of the Indoor Air Exclusion and its ambiguity, if any, were not certified to and are not before this Court. They are also not necessary for us to answer the question certified. Regardless of the

18

interpretation of the Indoor Air Exclusion, the public policy of the State of Oklahoma does not prohibit its enforcement.

¶29 This cause is distinguishable from our automobile insurance cases because, as the parties note, there is no public policy articulated by the Oklahoma statutes that is violated by an air quality exclusion in a liability insurance policy, regardless of what air quality events the exclusion might exempt.  Oklahoma has no compulsory liability insurance law requiring liability insurance be maintained for air quality issues, nor is there any law explicitly prohibiting such an exclusion. Indeed, outside of statutory requirements, this Court has previously noted we are mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase. *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 2002 OK 34, ¶9, 55 P.3d 1030; *Torres v. Sentry Insurance*, 1976 OK 195, ¶7, 558 P.2d 400; *Wiley v. Travelers Insurance Co.*, 1974 OK 147, ¶16, 534 P.2d 1293.  In *Ball* this Court refused to interfere in insurance contract provisions beyond the express requirements of the statutory mandate, in order to give "effect to the public policy underlying the Compulsory Liability Insurance Law while refraining from unduly interfering with the parties' freedom to contract, which can be restricted only in the name of articulated public policy." *Ball*, 2009 OK 38, ¶18.

¶30 Siloam would have us greatly circumscribe the freedom of contract principles articulated above by finding a coverage exclusion violates public policy if there is no public policy justification for its existence, and if it excludes coverage under circumstances where a responsible person would expect that liability insurance would be available to compensate for an injury.[6] There is no precedent for such an encroachment into parties' freedom to contract for liability coverage, and it runs counter to the carefully circumscribed approach this Court articulated in *Ball*.

¶31 The issue before this Court is not potential **compensation** to injured parties and the reasonableness of expecting it, but the enforceability of an exclusion limiting insurance coverage. Even were the exclusion to fully exclude the events of this cause from coverage under the insurance contract, that does not necessarily mean injured individuals will be unable to recover from Siloam itself. The insurance contract limits what Century must pay, and does not serve to limit

---

[6] Siloam asserts in its brief:

> As applied to ongoing and continuous attributes of indoor air, the Indoor Air Exclusion is reasonable-a commercial enterprise can take measures to prevent ongoing and continuous hazards and the unavailability of liability coverage could help incentivize the prevention of ongoing and continuous hazards. As applied to sudden and accidental carbon monoxide leaks or fires, on the other hand, the Indoor Air Exclusion cannot be reasonably justified by incentivizing a commercial entity to take greater precautions because sudden and accidental occurrences are facts of life which can be extremely difficult if not impossible to prevent. There is, therefore, no public policy justification for the application of the Indoor Air Exclusion to a sudden and accidental carbon monoxide leak. In the absence of any public policy justification, the Indoor Air Exclusion as applied to a carbon monoxide leak violates public policy because it potentially denies compensation to victims under circumstances in which a reasonable person would expect that liability insurance would be available to compensate for injury.

Brief of Plaintiff Siloam Springs Hotel, LLC, Regarding Certified Question, p. 3.

Siloam's potential liability. Just because one believes the air they breathe might become contaminated, and expects a business should carry insurance to cover that eventuality, does not mean the law requires it.

¶32 Further, any reliance on *Shepard* is misplaced. As we noted in that cause, the parties to an insurance contract agree upon the terms of the contract and are free to limit or restrict an insurer's liability. *Shepard*, 1983 OK 103, ¶2. An insurance coverage limitation between Century and Siloam is not the same as, for example, an exculpatory clause limiting liability in tort against Siloam by its guests. *See Schmidt v. U.S.*, 1996 OK 29, 912 P.2d 871. Regardless of its scope, the Indoor Air Exclusion neither clearly tends to injure public health, morals or confidence in administration of law, nor undermines the security of individual rights with respect to either personal liability or private property. *See Shepard*, 1983 OK 103, ¶3.

¶33 In short, there is no clearly articulated public policy in Oklahoma, statutory or otherwise, that prohibits enforcement of the Indoor Air Exclusion at issue in this cause. Regardless of the precise coverage limitations of the exclusion, Century and Siloam were free to negotiate and contract for coverage as they saw fit.

## CONCLUSION

21

¶34 In answer to the certified question, we declare that the public policy of the State of Oklahoma does not prohibit enforcement of the Indoor Air Exclusion which provides that the insurance afforded by the policy at issue does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause".

## CERTIFIED QUESTION ANSWERED

CONCUR: COMBS, C.J., WINCHESTER, EDMONDSON, REIF, JJ., and BUETTNER, S.J.

CONCUR IN PART; DISSENT IN PART: KAUGER, J. (by separate writing)

DISSENT: GURICH, V.C.J., WATT, and COLBERT, JJ.

NOT PRESENT AND NOT PARTICIPATING: WYRICK, J.